J-A20034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| R.D.S., NOW KNOWN AS R.D.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| B.A.B. | : | No. 121 MDA 2023 |
| | : | |

Appeal from the Order Entered December 19, 2022
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 20048497C

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: NOVEMBER 6, 2023**

R.D.S., n/k/a R.D.W. ("Father"), appeals from the order entered on December 19, 2022, in the Court of Common Pleas of Luzerne County, awarding him partial physical custody, B.A.B. ("Mother") primary physical custody, and the parties shared legal custody of their son, C.W. ("Child"), born in April of 2014.  The order further denied Father's request to enroll Child in the Graham Academy.  After careful review, we affirm the ruling of the learned Honorable Stefanie Salavantis.

The trial court set forth the relevant facts and procedural history of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

Father and Mother are parents to three (3) children, [their daughters,] B.S., age eighteen (18), [and] S.S., age fifteen (15), and [their son, Child], age eight (8). However, only custody of [Child] is at issue in the instant matter.

The history of this case is very extensive, spanning the last nineteen (19) years. Significantly, until Fall of 2019, Mother was the primary custodian of all three (3) minor children, with Father having physical custody on alternating weekends.[3] In September of 2019, Mother was indicated for child abuse due to failure to act on an allegation of inappropriate sexual contact between the oldest child, B.S., and Mother's boyfriend, [R.R.]. [Child] was not the subject of this allegation.

Simultaneous with Mother's indication through Children and Youth Services, Father filed an emergency petition for special relief in September of 2019. On September 17, 2019, an order based upon the agreement of the parties was entered, which provided Father with primary physical custody of, and the authority to make certain legal decisions for, the three children. The court notes that Father never had legal custody of any of the children, specifically the child at issue, C.W., until the September 17, 2019 order.[4] Mother timely appealed her indication status through the Department of Human Services, and after a wait period of over three (3) years, the indicated status of both Mother and Mother's boyfriend were expunged by an order dated October 6, 2022.

Between September 2019 and [the subject proceeding], the parties were before the court repeatedly between Mother's requests to increase her physical custody periods of the minor children and multiple contempt petitions and petitions for special relief filed by both parties. Among the petitions filed by Father are repeated allegations of sexual and physical abuse by Mother against the parties' two daughters. Notably, each of those petitions was either withdrawn by Father or dismissed by the court after hearings. Despite Children and Youth Services and

law enforcement involvement, none of Father's allegations were substantiated and no further action was taken against Mother. None of Father's petitions alleged any misconduct by Mother or anyone in Mother's home against [Child].

Due to the outstanding [child abuse] indication appeal, the most current order prior to [the subject proceeding, dated May 6, 2021,] provided that Father had primary physical custody of [Child], and Mother had partial supervised physical custody on alternating Saturdays from 10:00 a.m. until 6:00 p.m. and alternating Sundays from 10:00 a.m. until 6:00 p.m., supervised by the maternal grandmother.

Also important to the history of this case is the fact that in March of 2022, this family was referred by the court for counseling with Ms. Mary Pat Melvin Scarantino. Following the beginning of counseling, the parties' two daughters began acting aggressively and destructively when in Mother's custody, which worsened as time went on. Because of their escalating behaviors and safety concerns, Mother's periods of custody have only included [Child] for the past several months. **In June of 2022, Mary Pat Melvin Scarantino issued a report in which she opined that [Child] should return to Mother's primary custody.** Following receipt of that report, and one (1) week prior to the scheduled commencement of [the subject proceeding] in July of 2022, Father again made an unsubstantiated allegation of sexual abuse, this time against the maternal grandfather. Father's allegation resulted in an investigation by Children and Youth Services, which delayed trial in this matter until December of 2022. This most recent investigation resulted in an unfounded determination, and the case was closed. Also, shortly after Ms. Melvin Scarantino's report, Father unilaterally ended [Child]'s sessions with Ms. Melvin Scarantino and enrolled [Child] in the Children's Service Center. Father was subsequently held in contempt of this court's order [on] July 7, 2022 for his actions. This court also ordered that [Child] resume sessions with Ms. Melvin Scarantino.

Also during the above-referenced delay in trial, Father attempted to remove [Child] from the Wyoming Valley West School District and enroll him in the Graham Academy. The hearing on Father's request to transfer [Child]'s school was heard concurrently with trial in the above-captioned matter.

The court was able to complete an *in camera* interview with [Child] on July 7, 2022, however trial did not resume in this matter until December 14, 2022 due to the outstanding investigation of Father's allegations against the maternal grandfather.

_____

[3] Pursuant to the parties' custody order dated November 9, 2017, this order was followed until September of 2019. The September 17, 2019 order addressed physical custody[;] however[, it] was silent regarding legal custody.

[4] In fact, Father was not even specifically given legal custody in the September 17, 2019 order. His authority was limited to enrolling the three (3) children in the Crestwood School District and to re-engage with the Children's Service Center. Legal custody of the minor children was not addressed again until the *interim* order dated May 6, 2021, wherein it was ordered after a record hearing that the parties were to share legal custody of all three (3) minor children.

Trial court opinion, 2/8/23 at 3-6 (emphasis added; some footnotes omitted).[1]

_____

[1] Upon thorough review, the certified record supports the findings of the trial court except that the court held an ***in camera*** interview of Child on July 7, 2022. The certified record does not include this transcript. In addition, neither Father nor Mother indicate in their respective briefs that an ***in camera*** interview occurred on July 7, 2022. However, the parties acknowledge on the record in open court that the court conducted at least one ***in camera*** interview of Child on an unspecified date, although no transcript exists in the record.
*(Footnote Continued Next Page)*

The custody trial occurred on December 14, 2022, during which Mother testified with respect to her request for primary physical custody. Mother also presented the testimony of Mary Pat Melvin Scarantino, Child's court-appointed counselor; R.R., Mother's fiancé; and J.B., Child's maternal grandmother. Father testified with respect to his desire to maintain the existing custody order.

By order dated and entered on December 19, 2022, the trial court awarded the parties shared legal custody, Mother primary physical custody, and Father partial physical custody every Saturday from 10:00 a.m. until 6:00 p.m. The order also provided a holiday schedule. Further, the order denied Father's emergency petition for special relief, filed on October 20, 2022, for Child to be enrolled in the Graham Academy.

On January 18, 2023, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued a Rule 1925(a) opinion on February 8, 2023.

Father raises the following issues for review:

> 1. Did the trial court abuse its discretion or commit an error of law in its December 19, 2022 order in that it removes [Father]'s sole primary physical custody of [C]hild and instead awards, grants, and orders the switching of the legal and

---

**See** notes of testimony, 12/14/22 at 137-138. It is important to note that neither Father nor Mother requested that the court interview Child during the subject proceeding on December 14, 2022. **See id.**

- 5 -

shared physical custody of [C]hild solely to Mother?

2. Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, in limiting Father's physical custody of [C]hild without any evidence or testimony that [Father]'s time with [C]hild should be restricted or diminished?

3. Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, and failing to follow the mandates and factors set forth in 23 Pa.C.S.A. § 5328?

4. Were the trial court's conclusions unreasonable as shown by the evidence of record?

5. Did the trial court abuse its discretion or commit an error of law by failing to enter a custody order that is in the best interest of [C]hild?

Father's Brief at 3.[2]

We review Father's issues according to the following scope and standard

of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are

---

[2] Father does not raise an issue with respect to the court's denial of his request to enroll Child in the Graham Academy, and so we do not address this aspect of the order.

unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa.Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa.Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014). In addition,

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

The primary concern in custody cases is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all

- 7 -

factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa.Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa.Super. 2004)).

The Child Custody Act requires that trial courts consider the following sixteen best interest factors when awarding custody:

> **§ 5328.  Factors to consider when awarding custody.**
>
> **(a)  *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

This Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." **M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa.Super. 2013) (citing **A.D. v. M.A.B.**,

989 A.2d 32, 35-36 (Pa.Super. 2010)). Further, we have held that Section 5323(d) of the Act "requires the trial court to set forth its mandatory assessment of the [. . .] factors prior to the deadline by which a litigant must file a notice of appeal."[3] **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa.Super. 2013).

---

[3] In this case, the trial court did not render its assessment of the statutory factors prior to the appeal deadline. Rather, the court addressed the factors in its Rule 1925(a) opinion, which was after Father filed the notice of appeal. **See** Trial court opinion, 2/8/23 at 8-18. Because Father does not assert this as an issue in his concise statement of errors complained of on appeal and in the statement of questions involved in his brief, we do not raise it **sua sponte** to grant relief. **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa.Super. 2017) ("[I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived.").

Nevertheless, it is important to note that the custody order on appeal provided, "Either party may request to the Chambers of the undersigned to issue formal Findings of Fact within five (5) business days of the entry of this Order. In that event, Findings will be issued prior to Monday, January 16, 2023, in accordance with **C.B. v. J.B.**, 65 A.3d 946 (Pa.Super. 2013)." Order, 12/19/22 at ¶ 15.

In light of this Court's holding in **C.B.**, we reasoned:

> Ideally, trial courts should address the statutory factors, either orally in open court or in a written opinion, contemporaneously with the issuance of the custody order. If, because of the court's substantial case load or other factors, compliance with the Act is not possible contemporaneously with the order, the trial court should indicate in the custody order that its examination of the factors is forthcoming shortly, so as to not impede a litigant's ability to pursue an appeal if the litigant so chooses. This affords the trial court some flexibility in carrying out its function, while also providing litigants a reasonable amount of time to analyze the trial court's rationale, to determine

*(Footnote Continued Next Page)*

Turning to the merits of this appeal, Father's argument in his brief fails to comply with the Pennsylvania Rule of Appellate Procedure providing,

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of the parties as are deemed pertinent.

Pa.R.A.P. 2119. Father raises the above-cited five questions in his brief, but his argument is divided into the following two parts: (1) the court order "is against the weight of the evidence and is an abuse of discretion," and (2) the order "did not consider the best interest of" Child. ***See*** Father's Brief at 9, 13; ***see also*** Pa.R.A.P. 2101 ("Briefs. . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.") Because the defects in Father's brief are not substantial, we address them. As Father's arguments are related, we address them together.

---

whether to appeal, and to decipher which issues might be meritorious in that appeal.

***C.B.***, 65 A.3d at 955. In the instant matter, the trial court erred by failing to comply with ***C.B.*** and instead making its timely assessment of the statutory factors conditional upon either party's request.

Father baldly asserts that the trial court failed to consider all the evidence and properly weigh it. Specifically, Father argues that he is the more stable parent, and he can offer Child the more stable living environment. *See* Father's Brief at 18. In addition, without referencing any evidence, he asserts that the court awarded Mother primary physical custody based upon her gender. *See id.* at 10-12; *see also* 23 Pa.C.S.A. § 5328(b) ("In making a determination under subsection (a), no party shall receive preference based upon gender in any award granted under this chapter."). Father also asserts that the court "ignored" his opposition to Child being separated from his two older sisters who reside in his custody if Mother is awarded primary physical custody of him. *Id.* at 14. These assertions are meritless.

In assessing the Section 5328(a) factors, the court weighed none of them in Father's favor. The court weighed (2), (3), (5), (11), and (12) equally between the parties. The court found (14)–(16) inapplicable in this case. *See* Trial court opinion, 2/8/23 at 6-18. We discern no abuse of discretion by the court in applying the relevant law to the sustainable facts of this case.

The court found determinative that Father "has been engaging in a course of conduct designed to alienate [C]hild's affections from" Mother. *Id.* at 8 (footnotes omitted). The court explained, in assessing Section 5328(a)(1), as follows.

> Father was asked during his testimony what he tells
> [Child] about maintaining a relationship with Mother,
> and Father was unable to give a straight answer.
> Father did testify that he "absolutely" talks with

[Child] about the custody case, which the court believes certainly would have an impact on [Child]'s relationship with Mother. Also of significance, Father was questioned regarding his position on encouraging the parties' other two children, B.S. and S.S., to have a relationship with Mother due to the fact that they both are currently estranged from Mother. Father agreed that he has not made any efforts to reconnect his daughters with Mother. Father testified that "it's their choice" whether they want to speak with Mother or not. Although one of the daughters is now eighteen (18) years old, the second daughter is still a minor and living under Father's roof. Father claimed that if [Child] did not want to have a relationship with Mother that he would tell [Child] that maintaining a relationship with Mother is "in his best interest;" however, the court did not find that testimony to be credible. Father's complete lack of action regarding his daughters having a relationship with Mother raises great concerns for the court that he will act in the same manner with regard to [Child]'s relationship with Mother.

The court does not believe that Father will encourage and permit continuing and frequent contact between [Child] and Mother. To the contrary, the court believes that if Father were to retain primary physical custody, [Child]'s relationship with Mother would deteriorate to the point of non-existence, as is currently happening with his two older sisters and Mother. The court does believe that Mother would encourage [Child] to maintain a healthy relationship with Father if [Child] were living primarily with her.

Trial court opinion, 2/8/23 at 8-9; *see also* notes of testimony, 12/14/22 at 108-109, 123-128, 131 (Father's testimony supporting the court's findings).

It is important to note Mother's testimony that her relationship with Child was presently "Good. Very, very good." *Id.* at 37. Mother testified that she also had a "very good" relationship with her two daughters prior to losing

primary physical custody in 2019, and even during an unspecified initial period of exercising supervised physical custody. *Id.* at 39-40. However, she explained that "further on, [S.S.] and [B.S.], I don't know what happened. They were just destroying my mother's house," where Mother's supervised visits occurred. *Id.* at 34. Mother testified that she is not seeking custody of her fifteen-year-old daughter, B.S., "[b]ecause of her behaviors. I think if she did come home, I think she would do damage to my house. And I think she could put me in danger." *Id.* at 36.

In its related assessment of Section 5328(a)(8), the court explained that it credited the testimony of the family's court-appointed counselor, Ms. Scarantino, and found it determinative in fashioning the custody order. *See* Trial court opinion, 2/8/23 at 16. The court aptly found as follows regarding Ms. Scarantino's testimony:

> She testified that [Child] has been compromised emotionally and psychologically by Father. As mentioned earlier, Ms. Scarantino testified that [Child] reported to her that he has no friends, is experiencing bullying at school, and feels that no one pays attention to him at Father's house. [Child] also reported to Ms. Scarantino that Father is the only person that he socializes with. However, [Child]'s relationship with Father is one based on fear and intimidation. Ms. Scarantino first issued a report to the parties' counsel and to the court dated June 9, 2022, which addresses these concerns.
>
> Ms. Scarantino testified that following the parties' receipt of her June 9, 2022 report, she observed a "dramatic change" in [Child]'s behavior, noting that he regressed to refusing to answer questions, looking to Father before answering any questions, and then

- 14 -

began expressing a desire to stay with Father merely because he had "a lot of toys" at Father's residence. Ms. Scarantino additionally testified that based upon her observations, [Child] is clearly "vehemently afraid" of Father. She noted that she had also observed a stark change in [Child]'s body language when Father enters the room.

Prior to issuing her first report to counsel and the court, [Child] had consistently been forthcoming with Ms. Scarantino, and had expressed a clear desire to return to living with Mother and a fear of Father. Ms. Scarantino ultimately testified that, in her professional opinion, [Child] will be "very seriously damaged" if he remains residing primarily with Father. Ms. Scarantino testified that Child has a strong, loving bond with Mother, and that Mother is very nurturing to [Child].

Trial court opinion, 2/8/23 at 15-16; **see also** notes of testimony, 12/14/22 at 9-14, 19, 21-23, 27-28 (Ms. Scarantino's testimony supporting the court's findings).

In addition to finding Ms. Scarantino's testimony credible, the trial court stated:

This court has also had the benefit of interacting with, and observing, this family throughout many court proceedings, including trial. The court shares the same concerns regarding Father's escalating conduct and agrees that [Child] will be compromised if he continues to reside primarily with Father.

Father's actions throughout the lengthy history in this case, particularly since 2019, demonstrate a clear, and escalating, deliberate intent to alienate the affections of the children from Mother. Unfortunately, his repeated actions have been successful in effectually ending the relationship [of] the parties' two older daughters, S.S. and B.S., with Mother. The silver lining in this very troubling case is that there is

- 15 -

> still time to preserve [Child]'s relationship with
> Mother. However, that goal cannot be achieved with
> Father having any significant period of custody with
> [C]hild to the exclusion of Mother.

Trial court opinion, 2/8/23 at 16-17. The testimonial and documentary evidence supports the court's findings.

Indeed, the record reveals that, during 2021, and prior to Mother and her boyfriend receiving a favorable ruling in their appeal from the indicated child abuse report and the report ultimately being expunged from the ChildLine registry, Father filed custody pleadings that included new allegations against Mother and her boyfriend. Notes of testimony, 12/14/22 at 121-122. Father testified on cross-examination:

> Q. The court has addressed all those issues, correct?
>
> A. Yes.
>
> Q. Did anything ever happen to [Mother] as a result of you filing those petitions?
>
> A. No.
>
> Q. The police actually investigated at one point, correct?
>
> A. Yes.
>
> Q. And Children and Youth?
>
> A. Yes.

*Id.* at 122. Nevertheless, Father repeated the same allegations as his reason why Mother's custody award should remain supervised. *Id.* at 121-122.

Father's testimony continued on cross-examination:

Q. So you still believe after all that, [those allegations are] still an issue?

A. I believe it's an issue when the proper — steps didn't get taken. Like, didn't get taken care of.

Q. What steps?

A. Well, I mean, just, the — that my — that they didn't — they didn't take proper steps to investigate.

Q. So you believe that there was just the failure of the system?

A. Yes. Correct.

Q. And that all those [allegations] are accurate?

A. Yes. Correct.

*Id.* at 122-123.

With respect to Father's bald assertion that he is the more stable parent and would provide a more stable living environment for Child, there is no record evidence to support this. Father simply argues, without explanation, that he is more stable "considering [Mother's] past problems and current limitations. . . ." Father's Brief at 18. To the extent that Father refers to the report indicating Mother a perpetrator of child abuse, this status was reversed by the Pennsylvania Department of Human Services in October of 2022, and so we reject his claim.

Moreover, the court acknowledged "that stability is very important in a child's life. However, stability is important when it is healthy and safe for the child. The court does not find that to be the case here. It is clear to the court

that [C]hild is exhibiting concerning signs of stress and anxiety while being in Father's care. The court believes that it is critical for [Child] to be in a safe environment, in schooling that accommodates his individualized education program, and for Child to remain in counseling." Trial court opinion, 2/8/23 at 12-13.

Specifically, the court found:

> Even though [Child] has been consistently residing with Father for a long period of time, he has been experiencing a great deal of stress. [Child] has been in counseling with Ms. Scarantino since [the court order in] March of 2022, however that counseling was interrupted for a period of time by Father, who unilaterally decided to terminate sessions when he became unhappy with Ms. Scarantino's report. [Child]'s counseling with Ms. Scarantino has since resumed following a contempt hearing [and the court ruling against Father] in the summer of 2022. [During the subject proceeding], Ms. Scarantino testified that [Child] is very afraid of Father. She additionally testified that [Child] has been experiencing bullying at school, and he has reported to her that he has no friends and that the only person he socializes with is Father.
>
> Mother testified that she observed behavior changes in [Child] when it is time for him to return to Father's custody. Alarmingly, it was reported that when [Child] is about to return to Father's home after his visit with Mother ends, [Child] has accidents where he defecates in his clothing. This was testified to by Mother and maternal grandmother, and has happened on a number of occasions. These accidents have required that [C]hild be showered and changed. Father acknowledged that[C]hild does suffer from bathroom accidents, however he blames the accidents on Mother not properly potty training [Child], despite the fact that [Child] is now eight (8) years old and has been primarily in Father's care since September of

- 18 -

2019. Father claims he has been "working on [Child's bathroom accidents]" for the past three (3) years. Father offered no explanation for [Child]'s accidents.

Trial court opinion, 2/8/23 at 11-12; ***see also*** notes of testimony, 12/14/22 at 9-12, 15, 21-23, 27-29, 52-53, 86-87 (testimony of Ms. Scarantino, Mother, and the maternal grandmother supporting the court's findings.)

The trial court also considered the stability of Child's schooling and that he would have to change school districts if he resided in Mother's primary physical custody. The court found it significant that, even if Child, then in second grade and assigned an Individualized Education Program ("IEP"), remained in Father's primary physical custody, it was "not Father's intent to continue [Child]'s education in" Wyoming Valley West School District, the school district he currently attended. Trial court opinion, 2/8/23 at 10; ***see also*** notes of testimony, 12/14/22 at 24, 26. The court explained:

> In fact, along with his petition for full custody of [C]hild, Father additionally filed an emergency petition for special relief seeking to transfer [C]hild from the Wyoming Valley West School District to the Graham Academy, which is a school for children with autism and/or emotional challenges.
>
> [C]hild has never been, and to date still has not been, diagnosed with autism or with an emotional condition that would require specialized schooling. This decision was also not discussed with, or agreed to, by Mother. Father testified that neither he nor his wife are employed, and their family survives solely off of their children's disability checks. When probed regarding why he believes [Child] is autistic, Father testified that he believes [Child] is autistic because [Child] sometimes "jumps up and down and flaps his hands." Father has no medical or otherwise relevant training

in this regard. Father testified that he and his wife toured the Graham Academy one time in the summer of 2022, and "someone" who took him on the tour told him that [Child]'s [IEP] would follow him to the Graham Academy. Father admitted that he did not discuss [C]hild's [IEP] with this individual. Father was unable to provide any documentation that the Graham Academy was the appropriate school for [C]hild, had accepted [Child], or that [Child]'s [IEP] would, in fact, transfer to the Graham Academy. The court has a serious concern that Father's intent to obtain an autism diagnosis for [Child] is financially motivated.

Trial court opinion, 2/8/23 at 10-11 (footnote omitted); *see also* notes of testimony, 12/14/22 at 26, 29, 41-42, 106, 110, 115-120, 132 (testimony by Ms. Scarantino, Mother, and Father supporting the court's findings).

Finally, it is important to note that, as found by the court above, the sole source of income in Father's household is the Social Security disability payments received by Child, S.S., and B.S., and his wife's son. Notes of testimony, 12/14/22 at 109, 131. Father testified that he and his wife were last employed "last year." *Id.* Although the record does not include any information regarding why S.S. and B.S. receive Social Security disability, Father testified that his wife's son receives it due to being diagnosed with autism. *Id.* at 131-132. Father testified that Child also receives Social Security disability for "[h]is dyslexia and other problems that he has." *Id.* at 132. The only other medical condition of Child that Father described was "that he did have a problem with diabetes. However, it [has] been under control…." *Id.* at 110-111. The record does not verify that Child is diagnosed with diabetes. In any event, there is ample evidence that Father had a financial

motive in seeking an autism diagnosis for Child. *See id.* at 110, 115-116, 132 (Father's testimony that he relayed to the Children's Service Center alleged autistic symptoms of Child).

In conclusion, Father's bald assertions in this appeal have no merit. The trial court's consideration of Child's best interests was careful and thorough, and we discern no abuse of discretion. Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/06/2023